Charles M. Peirce, Appellee, v. Levi W. Sholtey, Appellant.

1. EVIDENCE—*examination of experts.* The approved method of introducing expert evidence as to the reasonable value of attorney's services, for which action is brought, is to put questions to qualified expert witnesses which assume certain facts claimed to be based on plaintiff's evidence and to ask what would be the reasonable and customary value of such services, assuming such facts to be true.

2. EVIDENCE—*examination of experts.* It is not proper in an action for fees for attorney's services, in introducing expert evidence, to ask expert witnesses whether they heard the evidence of plaintiff in chief as to the services rendered and, after an affirmative answer, to ask what in their judgment is the reasonable, customary and ordinary charge for such services; but it is not reversible error when there is no conflict on the question of the services performed.

3. PAYMENT—*burden of proof.* In an action for attorney's fees and for money advanced, where defendant pleads payment, it is proper to instruct that the burden of proving such plea is on defendant.

Appeal from the Circuit Court of McLean county; the Hon. C. D. MYERS, Judge, presiding. Heard in this court at the October term, 1912. Affirmed. Opinion filed March 18, 1913.

WELTY, STERLING & WHITMORE, for appellant.

FITZ HENRY & GILLESPIE, for appellee.

MR. PRESIDING JUSTICE THOMPSON delivered the opinion of the court.

This is an action in *assumpsit,* brought by Charles

M. Peirce, appellee, to recover $1,000 for services as an attorney and for money advanced for Levi W. Sholtey, the defendant. The declaration consists of the common counts. The defendant filed pleas of the general issue and of payment. A trial resulted in a verdict and judgment in favor of the plaintiff for $450.

The evidence shows that the defendant on June 20, 1908, made a contract with the South West Land Company, a corporation with headquarters in Chicago, for the purchase of a section of land in Texas and with his son executed for the purchase thereof six judgment notes amounting to $12,480. At the same time the son of defendant, made a contract for the purchase of a quarter section of land from the same company, and with his father executed six other judgment notes, for the sum of $3,200. The notes made by defendant and his son matured at various times from the execution of the contract to March, 1913. The defendant insisted the notes were deposited in a private bank known as the Anchor Bank run by one Jacob Martens. Martens claimed to have purchased several of the notes amounting to $8,000. Plaintiff in company with the defendant visited the office of the Land Company in Chicago and thereafter prepared and filed two bills in chancery, one for the defendant, the other for plaintiff's son, against the South West Land Company, Martens and others in the McLean Circuit Court praying for the cancellation of the contracts and notes and for injunctions restraining the defendants from transferring the notes. Injunctions were issued as prayed. Afterwards settlements of the difficulties between the parties were made by which the complainants obtained deeds upon the payment of $13,000.

The principal contention of the defendant is that he only employed plaintiff to file the bill in which he was complainant and that he is not responsible for the services rendered by plaintiff in his son's suit.

The son was not present at the office of plaintiff until after the bills had been prepared and was not a witness in this suit. It was a question of fact for the jury to decide from the evidence whether the defendant employed the plaintiff to file both bills or only defendant's bill. The evidence for the respective parties is in direct conflict. We are not able to say that the verdict and judgment is not sustained or is against the manifest weight of the evidence.

It is also insisted that in the settlement between defendant and the Land Company, the Land Company was to pay his attorney's fees. The settlement was reduced to writing and only provides for the payment of court costs; the plaintiff testified it was never agreed that the Land Company was to pay his fees.

It is also contended that the court erred in permitting questions to be put to practicing attorneys examined as to the reasonable value of attorney's fees. They first qualified as expert witnesses on the value of legal services. The questions put to a number of these witnesses assumed certain facts claimed to be based on the evidence of the plaintiff and asked what would be the reasonable, customary and fair value of such services assuming such facts to be true. To some witnesses the question was put if they had heard the evidence of the plaintiff in chief as to the services rendered by him, and having answered in the affirmative they were asked what in their judgment was the reasonable, customary and ordinary charge for such services. The first method is the approved method of introducing expert evidence. The latter method is not good practice and is disapproved, but is not reversible error when there is no conflict on the question of the services performed. 5 Ency. of Evidence, 619.

It is also insisted that an instruction given at the request of the plaintiff telling the jury that the burden of proving the plea of payment was on the de-

fendant, was erroneous. This was an affirmative plea and the instruction properly stated the law.

We find no error of law in the case.

The judgment is affirmed.

*Affirmed.*